## McMILLAN *et al. v.* HUNNICUTT *et al.*

1. Where an equitable petition was filed against certain minors who were duly served, and thereafter a guardian ad litem was appointed for them, such guardian could, under section 4848 of the Civil Code, consent to the trial of the case at the first term. Even were this not true, if the court proceeded to trial and the jury returned a verdict under which a decree

was entered, such decree, though it might be irregular or erroneous, was not void.

2. Where the title to realty was thereby decreed to be in the plaintiff, and she thereupon mortgaged it, and, after a default in the payment, the mortgage was foreclosed and the property sold at judicial sale; and where subsequently the minors brought an equitable petition to set aside the sale for fraud and collusion in obtaining the decree, and the only notice of such fraud and collusion alleged against the mortgagee was that when the loan was made by him to the plaintiff he had constructive notice of a trust deed of record, the will of the husband of the mortgagor, proceedings for the latter's appointment as trustee, her appointment as such, and the petition by her to have the title to the trust property to be decreed to be in her; *held*, that this allegation of constructive notice was not sufficient, even if proved, to authorize a court to set aside the decree; *held* further, that, as the mortgagee had no notice of fraud, the purchasers at the foreclosure sale obtained a good title although they may have had full notice of the fraud.

Argued December 13, 1899. — Decided January 30, 1900.

Equitable petition. Before Judge Candler. Fulton superior court. March term, 1899.

*P. F. Smith* and *R. R. Shropshire*, for plaintiffs.
*Arnold & Arnold*, for defendants.

SIMMONS, C. J.    1. One of the main propositions argued by counsel for the plaintiffs was, that a guardian ad litem, duly appointed, could not consent to the trial of an equity case at the first term of the court.    Section 4848 of the Civil Code authorizes " parties to proceedings for equitable relief" by consent to try cases at the first term.    When infants are brought into a court by proper service, the law presumes that they are incapable of conducting or controlling their side of the case, and therefore wisely provides for the appointment of a guardian ad litem to conduct, control, and direct the case so far as the minors' interests are concerned.    While such guardian is not strictly a party to the case, in the sense that the judgment is rendered for or against him personally, he is, in our opinion, such a party as may consent to a trial of the case of his wards at the first term. In consenting to such trial he acts for his wards.    There are several cases in our reports where this has been done.    It is true this particular question was not ruled in any of them, but this court recognized such a consent and held the judgments ob-

tained at the first term valid and binding.　*McGowan* v. *Lufburrow*, 82 *Ga.* 523; *Sharp* v. *Findley*, 71 *Ga.* 654.　Other cases might be mentioned where a similar consent by the guardian ad litem was not questioned.　We can not see that such conduct on the part of the guardian ad litem was calculated to injuriously affect the interest of his wards.　He did not consent to a decree against them, but simply that the case might be tried at the first term.　We apprehend that trial judges in equitable proceedings against minors will see to it that nothing is done that is prejudicial to the interests of the minors, whether the case be tried at the first or a subsequent term.　Even were this not true, and even though the guardian ad litem had no right or authority to consent to a trial at the first term, we would still hold that this judgment was not void for that reason.　As we have repeatedly held, there is quite a difference between a void and an irregular or erroneous judgment.　The former is an absolute nullity and confers no rights or interests on any one; the latter is binding until reversed or set aside.　In the present case the court, when the petition was filed and served upon the minors, had jurisdiction of the subject-matter of the suit and jurisdiction of the persons.　The consent to a trial at the first term was, under this view, no more than an irregularity, — such an irregularity as did not deprive the court of its jurisdiction.　Counsel for the plaintiffs cited in their brief many authorities as to the power of guardians ad litem in representing their wards.　We have examined many of them, and in each case have found the doctrine relied on by him as declaring the decree to be void was announced by the different courts upon appeal or writ of error.　In cases where the guardian had failed to answer, or had made an admission, or been guilty of some other conduct detrimental to the interests of his ward, and the lower court had sustained him in what he had done, the case would be, on appeal or writ of error, reversed ; or where the lower court had refused to sanction the conduct of the guardian and the case was carried up, the appellate court would affirm the judgment.　There is no case to be found where it is held that such an irregularity on the part of the guardian ad litem made the judgment or decree void, but all hold upon that subject that

the judgment into which such irregularities enter is simply erroneous. This court, in the case of *Foster* v. *Jones*, 23 *Ga.* 168, held : · "If one be appointed by the court guardian ad litem of a lunatic and accept the trust, a judgment against the lunatic will be good, notwithstanding the guardian fails to act. A judgment against a lunatic is not void but voidable ; and a purchaser · at sheriff's sale, under such judgment, would be protected." In that case an attachment was issued against Mary White, and pending the suit it was made to appear to the court that she had been, in due and legal form, declared to be a lunatic. A guardian ad litem was appointed to prepare and conduct her defense in the case. He accepted, but did not act or make any defense. Judgment was obtained, and the execution levied upon Mary White's land. The land was sold. Ejectment was afterwards brought to recover the land, and the above-quoted ruling was made. It is true Mary White was not a minor, but she was a lunatic and needed representation as much or more than a minor. The same principle would apply to each case. If in that case a motion for a new trial had been made or proper exception taken, it is very probable that the new trial would have been granted and the judgment set aside ; but, inasmuch as it was not excepted to and remained unreversed, this court held it was not void but of full force and effect in a subsequent suit brought to recover the land.

2. The petition alleged many facts tending to show the great hardship on these minors produced by the conduct of their mother in the management of this property after she got the full title. It seems that McMillan & Snow executed a deed of trust to McMillan to certain realty. Under the deed, McMillan was to hold the property in trust for his wife during her life, and, after her death, for their children. He died, and his wife was appointed trustee in his stead. She was also made his executrix, and qualified as such. The trust deed and the will were recorded. Subsequently Mrs. McMillan filed a petition in the superior court, alleging that the property was purchased with her money, that the legal title was taken in the name of her husband as trustee for her and the children, but that a trust in her favor resulted from the fact that the property was pur-

chased with her money. She prayed that both the title and the beneficial interest be decreed to be in her. The case was submitted to a jury, and a verdict returned finding the allegations of the petition to be true. The title was decreed to be in the petitioner, freed of any trust. After this decree, Mrs. McMillan borrowed $8,500 and gave a mortgage upon this property to secure the loan. She failed to repay the loan when it fell due, the mortgage was foreclosed, and the property was sold at judicial sale. Subsequently the present petition was filed to set aside the sale. While the original petition contained numerous charges of fraud and mismanagement between Mrs. McMillan and the guardian ad litem, and specified some acts which were alleged to have been fraudulent, by an amendment to the petition it was declared that the facts recited above constituted the only notice of fraud or irregularity with which the mortgagees were affected. When this amendment was made and allowed, the trial judge sustained a demurrer to the petition filed by the purchasers at the foreclosure sale. We think that the facts shown were not sufficient to put the mortgagees upon notice that the decree was fraudulent and void, even if it were so under the allegations of the original petition. Had the mortgagees searched the records they would have found the original deed from McMillan & Snow to McMillan, the application of Mrs. McMillan to be appointed trustee in her husband's stead after his death, the record of her appointment, and the petition filed by her to put the legal title and the beneficial interest in her, proper and legal service upon the minors who were interested, the appointment of a guardian ad litem, and an apparently regular and proper verdict and decree, had, however, at the first term. Had they read the petition they would have known that the court had jurisdiction in a case of the kind and to make a decree such as was prayed. The pleadings, verdict, and decree were all regular on their face and showed no fraud or intimation of fraud in the procurement of the decree. There was, therefore, nothing whatever to put them on notice or inquiry as to any fraud or collusion. When they loaned their money to Mrs. McMillan they relied upon the decree showing both the legal title and the beneficial interest to be in her. She

got the money, expended it, and failed to repay it when due; and they foreclosed their mortgage. They had no notice of fraud or collusion, and brought the property to sale through the regular channels. The purchasers at the sale got a good title as against these children, even though such purchasers had notice. It is a well-settled principle, announced not only by outside authorities but in our code, that one without notice can convey a good title to one with notice. When the land was purchased at the judicial sale, the purchasers at that sale succeeded to all the rights and interests of the mortgagees. *Cosnahan* v. *Johnston*, 108 *Ga.* 235; Civil Code, § 3938, and cases cited. We therefore affirm the judgment of the court below, sustaining the demurrer to the petition as amended.

*Judgment affirmed. All the Justices concurring, Little, J., for special reasons.*